# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.M. and C.M.-1**

**No. 20-0380** (Roane County 19-JA-47 and 19-JA-48)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.M.-2, by counsel Joseph H. Spano Jr., appeals the Circuit Court of Roane County's March 6, 2020, order terminating her parental rights to M.M. and C.M.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Melinda C. Dugas, filed a response in support of the circuit court's order. The guardian ad litem, Ryan M. Ruth, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she alleges that she substantially remedied the conditions of abuse and neglect.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed an abuse and neglect petition based upon substance abuse in the home. According to the petition, law enforcement responded to the home due to an overdose by M.M.'s father. Upon arrival, officers found the father unresponsive with "baggies of white powder, believed to be methamphetamine, [and] needles" within the children's reach. With regard to petitioner, the DHHR alleged that she was incarcerated at the time of the incident and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, they will be referred to respectively as C.M.-1 and C.M.-2 throughout the memorandum decision.

1

failed to protect the children by allowing M.M.'s father to reside in the home. The petition further alleged that petitioner and M.M.'s father engaged in domestic violence in the home. Finally, the petition alleged that petitioner failed to provide the children with appropriate housing based on the condition of the home.

At an adjudicatory hearing in September of 2019, petitioner stipulated to the fact that her substance abuse negatively impacted her ability to appropriately parent and that domestic violence occurred in the home. As such, the circuit court adjudicated her as an abusing parent. The following month, the court granted petitioner an improvement period that required her to complete long-term substance abuse treatment at The Ark, Inc., in Huntington, West Virginia. Following the granting of the improvement period, petitioner voluntarily left her treatment program without completing the same on November 19, 2019. According to a letter received from the program director, petitioner left the program that morning, only to return later to gather her belongings, at which point petitioner "admitted to another client she had used drugs the previous night." Two days later, the DHHR and the guardian filed a motion to revoke petitioner's improvement period and terminate her parental rights. However, at a hearing on December 16, 2019, the DHHR and the guardian requested a continuance in order to convene a new multidisciplinary team ("MDT") meeting upon being informed that petitioner was enrolled in a new inpatient substance abuse treatment program at the Serenity House in Huntington, West Virginia. Despite petitioner's attendance at this hearing, she failed to inform the parties or the court that she had already been discharged from Serenity House on December 9, 2019. It is uncontroverted, however, that petitioner began drug screening at the Roane County Day Report Center on the day of the hearing and that her screens showed negative results between then and the final dispositional hearing on January 27, 2020.

At the final hearing, petitioner denied that she admitted to another client at The Ark that she used drugs the night prior to voluntarily leaving the program. According to petitioner, she left the program for several reasons, including that other participants were using drugs. She then alleged that participants at Serenity House also abused drugs, which was contrary to evidence that Serenity House personnel stated that petitioner admitted using fentanyl. Petitioner further admitted that she was not enrolled in any inpatient substance abuse treatment at the time, asserting that she was denied entry into a third program because of her recent negative drug screens. She did inform the court, however, that she was accepted into outpatient treatment at the Prestera Center and was participating in services through that program at the time of the hearing. Petitioner further alleged that she was never informed that inpatient substance abuse treatment was required, instead believing that she could cease treatment at any time and, instead, submit to drug screens at the Day Report Center. According to petitioner, she suffered from substance abuse issues for an extended period, having had issues when she was younger, after which she submitted to treatment and was drug free for long periods. Petitioner also admitted that a "stamp" is a quantity of drugs.

Counsel for M.M.'s father then presented petitioner with text messages sent to the father's phone from petitioner's phone number in November of 2019, all of which petitioner denied sending. According to petitioner, several people had access to her phone while she was at The Ark, including other patients and Ark personnel. Specifically, petitioner alleged that "there was girls at the Ark who had access to [her] phone who was also having relations" with M.M.'s

father, so petitioner stated that she could not guarantee that she sent the messages in question. Counsel then questioned petitioner about several messages, including one in which petitioner admitted to relapsing and another where she admitted to spending her "last 20 on a stamp." Finally, one message appeared to evidence petitioner's manipulation of drug screens, as petitioner read the following message into the record: "I don't know, I had it out in six hours last time, but I didn't do very much, I mean, I might be able to do it tomorrow if it's in a cup."

Based on this evidence, the court found that petitioner had not been compliant with the terms and conditions of her improvement period because she was required to complete inpatient substance abuse treatment. Importantly, the court found that petitioner's "testimony was not credible on several . . . matters, such that it is necessary to disregard much of her evidence." The court found that petitioner continued to suffer from a long history of substance abuse that negatively affected her ability to properly parent the children, as evidenced by M.M.'s father's testimony that petitioner admitted that she continued to abuse drugs during her improvement period. Despite the fact that her screens appeared negative for the month leading up to the final hearing, the court found that petitioner failed to appreciate the severity of her addiction and recognize the steps needed to maintain her sobriety. Further, the circuit court found that petitioner's "willpower alone will never be enough to conquer the complex issues of substance abuse" and that even if she were to remain sober for a short time, "it is unlikely to last without other treatment and/or methods of support." In fact, the court cited petitioner's long history of substance abuse as demonstrative of petitioner's inability to obtain long-term success without treatment. The court found that petitioner's argument that she had been sober for too long to be accepted into a treatment program was not persuasive, as it ignored the fact that she either voluntarily left or was discharged from two separate treatment programs. The court further noted petitioner's admission to having failed to comply with the requirement that she complete this treatment. Ultimately, the court found that because petitioner was adjudicated for substance abuse, her failure to complete treatment to remedy this issue was of critical importance to its determination and evidenced her failure to make necessary progress toward the goal of reunification. Based on this evidence, the court revoked petitioner's improvement period, found that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future and that termination of her rights was necessary for the children's welfare, and ordered the termination of her parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

[2]M.M.'s father voluntarily relinquished his parental rights below, and the permanency plan for M.M. is adoption in the current foster home. The permanency plan for C.M. is to remain in the custody of the nonabusing father.

3

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's lone assignment of error is predicated on her assertion that she remedied the condition of abuse and neglect for which she was adjudicated—her substance abuse. According to petitioner, she established that she corrected her substance abuse issues by providing negative drug screens for an extended period of time. We find, however, that this evidence was not dispositive of the issue of whether her substance abuse issues were remedied.

Importantly, petitioner acknowledged below that she did not comply with the terms and conditions of her improvement period because she failed to complete a substance abuse treatment program. Indeed, petitioner was either discharged from or voluntarily left two inpatient programs prior to completion. On appeal, petitioner argues that she left these programs because other participants abused drugs while in treatment, but the circuit court was presented with this evidence and clearly found that it lacked credibility, a determination that we will not disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Tellingly, petitioner did not raise this issue at the hearing on December 16, 2019, when the court permitted a continuance to amend the case plan to reflect treatment at Serenity House, a program petitioner was already discharged from by the time that hearing was held. On the contrary, the court heard evidence that petitioner admitted to abusing drugs in both programs. Moreover, petitioner ignores the fact that the circuit court was presented with evidence from the father of M.M. that petitioner admitted to continued substance abuse during her improvement period and also indicated that she manipulated her drug screens to avoid detection of her continued substance abuse.

In arguing that the circuit court erred in terminating her parental rights, petitioner relies on dicta from this Court discussing the manners in which circuit courts can measure the progress of parents in remedying different conditions of abuse and neglect. In the case of *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014), we discussed how the circuit court was faced with the "difficult question" of "assess[ing] whether the mother had internalized what the service providers endeavored to teach her during her improvement period and whether she would, in fact, protect her children by avoiding relationships with individuals in whose presence her children were placed at risk of abuse." *Id*. at 66, 754 S.E.2d at 752. In addressing the difficult nature of making such a determination, the Court contrasted it with other common scenarios presented in these types of proceedings, remarking that in "abuse and neglect proceeding[s] that

involve[] a dirty home or a parent abusing drugs, . . . a parent's success in an improvement period can be measured in concrete terms of whether the home is clean or the parent's drug screens are negative." *Id*. We find, however, that petitioner's reliance on this language is unpersuasive. *B.H.* did not concern allegations of substance abuse, and it is telling that petitioner does not cite to a single case in which substance abuse was at issue to support her assertion that a period of negative screens alone constitutes a total remediation of a parent's extended history of substance abuse in the absence of any successful treatment. Given that *B.H.* was not a case that concerned an analysis of whether a parent corrected substance abuse issues, we do not find it instructive in addressing the specific facts of the instant appeal.

Even more importantly, the evidence of petitioner's negative drug screens must be viewed in conjunction with her admission to at least three individuals that she continued to abuse substances during her improvement period and her communications with the father of M.M. that indicated she manipulated drug screens to avoid detection of her continued substance abuse. Petitioner testified that she did not send the text messages in question and, rather, that other individuals in her drug treatment programs had access to her phone. In response to these assertions, we reiterate the circuit court's finding that petitioner's testimony lacked credibility and, therefore, decline to disturb such findings on appeal. Instead, we agree with the circuit court that petitioner's failure to complete substance abuse treatment, a term and condition to which petitioner expressly agreed, evidenced her refusal to acknowledge the severity of the issue and underscored her failure to appropriately remedy the conditions of abuse and neglect at issue. As the court explained, both the DHHR and the guardian were explicitly clear that petitioner's successful completion of substance abuse treatment was made a term and condition of the improvement period in order for them to agree to its granting, evidencing the importance of this condition. In fact, the circuit court succinctly addressed the importance of treatment, finding that it was "one of the most critical terms and conditions . . . that was designed to lead to the safe return of the children to her care, custody and control." As the circuit court found, petitioner was questioned about this requirement, and she "acknowledged she understood." Therefore, any argument on appeal that petitioner believed she could cease substance abuse treatment and, instead, submit to drug screens at the Day Report Center does not entitle petitioner to relief.

Further, inpatient substance abuse treatment was not only an express term of petitioner's improvement period, but it was also included as a necessary requirement of her family case plan. "The purpose of the family case plan as set out in W.Va. Code [§ 49-4-408], is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 2, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003). Petitioner's argument on appeal assumes that she was entitled to disregard the agreed upon family case plan designed to resolve the issues that necessitated the petition's filing, which is simply not the case. Rather, a parent is entitled to participate in an MDT, convened by the DHHR, in order to develop an appropriate method to remedy conditions of abuse and neglect. W. Va. Code § 49-4-408. Instead of demonstrating that she corrected the

5

conditions of abuse and neglect, as petitioner argues, her conduct demonstrates that there was no reasonable likelihood the conditions could be substantially corrected in the near future.[3]

According to West Virginia Code § 49-4-604(d)(3), a situation in which there is no such reasonable likelihood includes when

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child

Petitioner does not dispute that she failed to follow through with the case plan, given her failure to successfully complete substance abuse treatment. Moreover, the court found that petitioner's failure to acknowledge the steps and resources necessary to meaningfully overcome her substance abuse issues constituted a continued danger to the children. As this Court has long held, "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's refusal to acknowledge the severity of her substance abuse, in conjunction with her admissions to continued substance abuse and the evidence of her manipulation of drug screens, it is clear that there was sufficient evidence upon which to base a finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. West Virginia Code § 49-4-604(c)(6) permits the termination of parental rights upon these findings. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

---

[3]In support of her assignment of error, petitioner also asserts that she corrected the issue of domestic violence in the home by ending her relationship with M.M.'s father. We find, however, that this evidence is not compelling, as simply ending her relationship with someone with whom she engaged in domestic violence does nothing to remedy the underlying issues that led to that violence. On appeal, petitioner cites to no evidence of having completed counseling or other remedial services focused on domestic violence. Further, the order on appeal is silent as to the issue of domestic violence, indicating that petitioner's success or failure in remedying this issue was not a factor upon which termination was based. As such, we do not address this argument on appeal.

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 6, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison